UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COREY IZEIL HARLEY, | Civil Action No. 13-7656 (JMV) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| NJSP ADMINISTRATOR CHARLES E. WARREN, et al., | |
| Defendants. | |

APPEARANCES:
Corey Izeil Harley, # 576446 / 221018C
Northern State Prison
168 Frontage Rd.
P.O. Box 2300
Newark, NJ 07114
    Plaintiff, *pro se*

VAZQUEZ, District Judge

    Plaintiff Corey Izeil Harley, an inmate presently confined at Northern State Prison in Newark, New Jersey, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). This case was previously administratively terminated due to Plaintiff's failure to satisfy the filing fee requirement. (ECF No. 2). Plaintiff subsequently submitted an application to proceed *in forma pauperis* (ECF No. 4), and an Amended Complaint (ECF No. 7), and the case was reopened for review by a judicial officer. In an Order dated November 2, 2015, Plaintiff was granted leave to proceed *in forma pauperis*. (ECF No. 8).

    At this time the Court must screen the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit pursuant to 28

U.S.C. § 1915(e)(2)(B); seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b); or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  For the reasons set forth below, the Amended Complaint will be dismissed without prejudice.

## I.     BACKGROUND

The following factual allegations are taken from the Amended Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

In July of 2011, Plaintiff's brother was murdered.  (Amended Complaint ("Am. Compl.") ¶ 10, ECF No. 7).  Between 2012 and 2013, the individual charged and convicted for the murder of Plaintiff's brother was assigned to New Jersey State Prison, where Plaintiff was also housed at the time.  (*Id.* ¶ 11).  Upon discovering that the individual who murdered his brother was housed at the same facility, Plaintiff, his family members, and the Administrator of East Jersey State Prison, Beverly Hastings, notified New Jersey State Prison authorities.  (*Id.* ¶ 13).  As a result of those communications, a "Keep Separate" Order regarding Plaintiff and this individual was placed in both inmates' classification files.  (*Id.* ¶ 14).  Despite this "Keep Separate" Order, on July 26, 2013, Defendant Kennedy assigned the other inmate to Plaintiff's housing unit. (*Id.* ¶ 15).  On July 27, 2013, Plaintiff and the other inmate had a physical altercation in the shower. (*Id.* ¶ 17).  Prison staff responded and both inmates were taken to the medical department.  (*Id.* ¶ 19).

As a result of the fight, Plaintiff's hand was severely injured.  (*Id.*).  At the infirmary, Plaintiff states that he was examined by Nurse Carver, but he did not receive any treatment.  (*Id.* ¶ 20).  However, he then states that Nurse Carver glued the wound shut.  (*Id.* ¶ 22).  His request to see a doctor was denied.  (*Id.* ¶ 20).  Throughout the remainder of the day, Plaintiff states that

he complained to various individuals, including nurses, custody staff members and others, about the pain he was suffering. (*Id.* ¶ 23). Pursuant to the requests he submitted for medical treatment, on July 29, 2013, Plaintiff was admitted to the infirmary and x-rays were taken. (*Id.* ¶ 25). An infection had "set in" and the wound had to be re-opened and cleaned. (*Id.* ¶ 26). Plaintiff was diagnosed with an infection in the bone. (*Id.*) Plaintiff states that despite his complaints, he was not taken to a specialist or to an outside hospital for twenty days. (*Id.* ¶ 27).

On August 16, 2013, Plaintiff was admitted to St. Francis Medical Center for three days to receive treatment. (*Id.* ¶ 6). He was prescribed three different antibiotics and surgery was performed on August 19, 2013. (*Id.* ¶ 29). On August 23, 2014, Plaintiff was released back to the New Jersey State Prison infirmary. (*Id.* ¶ 30). At the prison, Plaintiff repeatedly explained to all medical personnel that his condition warranted physical therapy and that his treating physician, Dr. Shakir, had ordered it. (*Id.* ¶ 31). However, Plaintiff did not receive any physical therapy until October 11, 2013, when he was confined at Northern State Prison, and the physical therapist explained that there was very little he could do because the hand had already healed. (*Id.* ¶ 33).

Plaintiff as defendants: (1) Charles E. Warren Jr., as the Administrator of New Jersey State Prison; (2) Kenneth Nelson, as the former Associate Administrator; (3) Jim Barns, the Assistant Administrator; (4) Lt. Kennedy; (5) Lance Carver; (6) Sharon Niery; (7) Ms. Chase; (80 Ms. Galligher; (9) Dr. Abu Ahsan; and (10) John and Jane Does Medical Personnel. He seeks injunctive and monetary relief. (*Id.* at 9).

## II. STANDARDS OF REVIEW

### A. Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub.L. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis* and is seeking relief from government employees.

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

"While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

4

That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679); *see also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted).

In general, where a complaint subject to statutory screening can be remedied by amendment, a district court should not dismiss the complaint with prejudice, but should permit the amendment. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that leave to amend should be granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"), cited in *Thomaston v. Meyer*, 519 F. App'x 118, 120 n.2 (3d Cir. 2013); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 453 (3d Cir. 1996).

Finally, in determining the sufficiency of a *pro se* complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Nevertheless, "*pro se*

5

litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

   B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III.   DISCUSSION

   A. Failure to Protect

Under the Eighth Amendment, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was

deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. *Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Bistrian v. Levi*, 696 F.3d at 367 (quoting *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). A plaintiff can prove an official's actual knowledge of a substantial risk to his safety 'in the usual ways, including inference from circumstantial evidence.'" *Id.* (quoting *Farmer*, 511 U.S. at 842).

However, a negligent failure to prevent an attack is insufficient to establish a violation of the Eighth Amendment. *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights); *see also Schwartz v. Cnty. of Montgomery*, 843 F. Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which cannot support a § 1983 action for violation of the Eighth or Fourteenth Amendments).

It appears that Plaintiff is raising his failure to protect claim against Defendants Warren, Nelsen, Barnes, Lawrence and Kennedy. With regard to Defendants Warren, Nelsen, Barnes and Lawrence, in order to prevail on a claim under § 1983, plaintiff must assert that the individual defendant had personal involvement in the alleged wrongs, and liability cannot be predicated solely on the operation of respondeat superior. *See Iqbal*, 556 U.S. at 675–77, 129 S. Ct. 1937; *Rode*, 845 F.2d at 1207–08 (holding that a plaintiff must establish that the defendants "have personal involvement in the alleged wrongs [which] ... can be shown through allegations of

7

personal direction or of actual knowledge and acquiescence"). Plaintiff does not make any factual allegations in the body of the Amended Complaint against these Defendants. There is no indication that these Defendants were in any way involved with Plaintiff, the "keep separate" order, or the decision to house Plaintiff in the same unit as the inmate who killed his brother. Rather, it appears that Plaintiff included these Defendants based purely on their supervisory roles, which is an impermissible basis for liability. *Id.* As a result, the failure to protect claim against Defendants Warren, Nelsen, Barnes and Lawrence will be dismissed without prejudice.

With regard to Defendant Kennedy, Plaintiff does allege personal involvement. Specifically, he alleges that Defendant Kennedy assigned the inmate who killed his brother to the same housing unit as Plaintiff. (Am. Compl. ¶ 15). However, Plaintiff has not alleged that Defendant Kennedy was deliberately indifferent. In fact, there are no allegations that Defendant Kennedy was even aware of the "keep separate" order or the history between the two inmates. Without any suggestion that Defendant Kennedy was aware of the risk to Plaintiff, this claim must be dismissed without prejudice. *See Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) ("It is well established that merely negligent misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent.")

B. <u>Denial of Medical Treatment</u>

Plaintiff has alleged an Eighth Amendment denial of medical care claim against Defendants Carver, Niery, Chase, Galligher, Ahsan, John Doe and Jane Doe.

In order to set forth a cognizable claim for a violation of his right to adequate medical care, Plaintiff must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also*

*Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam) ("In order to state a Fourteenth Amendment claim of inadequate medical attention upon which relief may be granted, a plaintiff must allege that a defendant acted with deliberate indifference to his serious medical needs.").

"A medical need is serious if it has been diagnosed by a physician as requiring treatment, or if it is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (citations and internal quotation marks omitted). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer*, 511 U.S. at 837). The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Notably, however, allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam) (citing *Estelle*, 429 U.S. at 105–06); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001).

Immediately after the fight with the other inmate, Plaintiff was taken to the infirmary. (Am. Compl. ¶ 20). His hand was examined by Defendant Carver who "glued" the wound shut and failed to provide antibiotics. (*Id.* ¶¶ 21-22). Though an argument could be made that this was the wrong course of action because an infection ultimately developed, Defendant Carver was

not deliberately indifferent to Plaintiff's medical needs.  He provided treatment to Plaintiff by examining and gluing the wound shut.  At best, Plaintiff has alleged a claim for medical malpractice against Defendant Carver, which does not constitute a constitutional violation.  *See Pierce*, 520 F. App'x at 66.

Plaintiff alleges that for the rest of day on July 27th, he complained about the pain he was suffering to "anyone passing the cell." (*Id.* ¶ 23).  However, Plaintiff does not identify the individuals to whom he complained with any specificity.  Nor does he state that he requested treatment from these unidentified persons.  Plaintiff stated that he submitted requests for medical treatment from July 27th through July 29th, however he does not state to whom he submitted these requests and what response he received.  Based on the lack of information provided, the Court is constrained to dismiss these claims without prejudice under *Iqbal*.

Finally, Plaintiff alleges that after his surgery, when he was returned to the prison infirmary, he explained to "all medical personnel" that he needed physical therapy and the "treating physician", Dr. Shakir, had ordered it.  (Am. Compl. ¶ 31).  However, he did not receive any physical therapy until October 2013.  (*Id.* ¶ 33).  Again, Plaintiff fails to provide sufficient facts regarding this claim.  He states that he informed "all medical personnel," however it is unclear to whom that refers.  Moreover, it is not clear how Dr. Shakir is related to Plaintiff's care or how Dr. Shakir "ordered" the physical therapy for Plaintiff.  Based on the limited facts provided, at this juncture, the Court must dismiss this claim without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Amended Complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, because it is conceivable that Plaintiff may be able to supplement his

pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file a second amended complaint.[1]

An appropriate order follows.

s/ John Michael Vazquez
JOHN MICHAEL VAZQUEZ
United States District Judge

Date: July 22, 2016
At Newark, New Jersey

---

[1] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases). *See also* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*