<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COREY IZEIL HARLEY, | : | |
| | : | Civil Action No. 13-7656(JMV) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NJSP ADMINISTRATOR | : | |
| CHARLES E. WARREN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

APPEARANCES:

Corey Izeil Harley, #576446/221018C
Northern State Prison
168 Frontage Rd.
P.O. Box 2300
Newark, NJ 07114
        Plaintiff <u>pro</u> <u>se</u>


**VAZQUEZ,** District Judge

Plaintiff Corey Izeil Harley, an inmate presently confined in Northern State Prison in

Newark, New Jersey, filed this civil rights action on December 16, 2013. (ECF No. 1.) The case

was administratively terminated because Plaintiff failed to pay the filing fee or submit a properly

completed application to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. (ECF No. 2.)

On February 6, 2014, Plaintiff filed an IFP application, which was granted. (ECF Nos. 4, 6.)

Plaintiff filed an Amended Complaint on October 30, 2014. (ECF No. 7.)

1

On July 22, 2016, this Court dismissed the [First] Amended Complaint without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. (ECF No. 10.) This matter comes before the Court upon Plaintiff's motion to amend the complaint. (ECF No. 12.) Plaintiff's motion to amend the complaint will be granted, but the Court must review the Second Amended Complaint[1] pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

I.      BACKGROUND AND SECOND AMENDED COMPLAINT

Plaintiff alleges the following in the "Statement of Facts" of his Second Amended Complaint. (ECF No. 12-2, ¶¶10-33.) Plaintiff's brother was murdered in July 2011. (*Id.*, ¶10.) Plaintiff and the individual, named Maurice, charged and convicted for his brother's murder were inmates in New Jersey State Prison. (*Id.*, ¶¶11, 12.) Plaintiff's mother and other family members discovered that Plaintiff was housed in the same prison as Maurice, and they notified prison authorities about their concerns. (*Id.*, ¶13.) As a result, a "Keep Separate" notification was placed in the classification files of both inmates, indicating that the two prisoners were to have no contact with each other. (*Id.*, ¶14.)

Despite the "Keep Separate" notification in the files, on July 26, 2013, Lt. Kennedy assigned Maurice to the same housing unit as Plaintiff. (*Id.*, ¶15.) When they encountered each other, Maurice made a threatening gesture at Plaintiff. (*Id.*) The next morning, while Plaintiff was in the shower, Maurice entered, "and a major fight ensued." (*Id.*, ¶¶15-16.)

After a code was alerted, staff arrived and took both inmates to the medical department. (*Id.*, ¶19.) Plaintiff suffered a badly injured hand, which was examined but not treated by L. Carver

---

[1] The Second Amended Complaint consists of the proposed amended complaint (ECF No. 12-2) and the addendum (ECF No. 12-1) attached to Plaintiff's motion to amend complaint (ECF No. 12.)

in the infirmary. (*Id.*, ¶20.) Plaintiff's request to see a doctor due to the pain and condition of his hand was denied. (*Id.*) Plaintiff was not prescribed antibiotics for the injury to his hand, which was caused by contact with Maurice's teeth. (*Id.*, ¶21.) Carver glued Plaintiff's wound shut but did not provide Plaintiff with any medication. (*Id.*, ¶22.)

Back in his cell, Plaintiff complained "to anyone who would listen" that he was in pain and needed treatment. (*Id.*, ¶23.) He submitted requests for medical treatment from July 27 through July 29, because his hand was badly swollen and discolored. (*Id.*, ¶24.) Plaintiff was admitted to the infirmary for x-rays on July 29, 2013. (*Id.*, ¶25.) He was diagnosed with an infection in the bone, and the wound had to be reopened and cleaned. (*Id.*, ¶26.)

For twenty days, Plaintiff complained about his medical treatment until he was taken to St. Francis Medical Center on August 16, 2013. (*Id.*, ¶¶27-28.) There, he was prescribed antibiotics, and surgery was performed on August 19, 2013. (*Id.*, ¶29.) Plaintiff was returned to New Jersey State Prison on August 23, 2014. (*Id.*, ¶30.)

In the prison infirmary, Plaintiff complained to all medical personnel that a Dr. Shakir had ordered physical therapy for his hand, but physical therapy was not being provided to him at the prison. (*Id.*, ¶¶30-32.) Plaintiff did not have physical therapy until he was transferred to Northern State Prison on October 11, 2013. (*Id.*) By that time, Plaintiff's hand was disfigured, and the physical therapist told him there was little that could be done due to the delay in treatment. (*Id.*, ¶33.)

For his first cause of action against Defendants Warren, Nelsen, Barnes, Lawrence and Kennedy, Plaintiff asserts that they failed to monitor the classification process and failed to observe active "Keep Separates." (*Id.*, ¶35.) This resulted in their failure to protect Plaintiff, in violation of

the Eighth Amendment, the State Constitutional prohibition of cruel and unusual punishment, and the New Jersey Civil Rights Act, N.J.S. 10:6-1 and 2. (*Id.*)

For his second cause of action against Defendants Warren, Nelsen, Barnes, Lawrence and Kennedy, Plaintiff asserts that they failed to:

> appropriately address communications received from Plaintiff's mother, family member, and other departmental officials, were deliberately indifferent to a dangerous condition within the confines of the prison facility and as a result, plaintiff suffered irreparable injury in violation of the State and Federal Constitutions, 42 U.S.C. §1983 and, the New Jersey Civil Rights Act, N.J.S. 10:6-1 and 2.

(*Id.*, ¶37.)

In the Supplement to Plaintiff's Second Amended Complaint, Plaintiff alleges that Warren, Nelson, Barnes, Lawrence and Kennedy, in their respective roles as the Administrator of New Jersey State Prison, the Associate Administrator of New Jersey State Prison, the Assistant Administrator of New Jersey State Prison, and Supervising Custody Officer, "failed to assure the proper management and conduct of the prison facility, including the implementation and exercising of policy, rule or regulatory directives." (ECF No. 12-1, ¶¶41-43.) As to each of these defendants, Plaintiff also alleges that "this duty also included the construction and administration of the classification of prisoners assigned to the facility." (ECF No. 12-2, ¶¶4-7.) In addition, Plaintiff alleges that Kennedy's actions of providing housing assignments and "other security related activities" violated Plaintiff's rights and under the Eighth Amendment. (ECF No. 12-1, ¶44.)

## II.      DISCUSSION

A.     *Sua Sponte* Dismissal

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), district courts must screen complaints filed by prisoners in civil actions and dismiss any claim that is frivolous or malicious, fails to state

a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint" but need not accept legal conclusions as true. *Id.* Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

B.   Section 1983 claims

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory . . . subjects, or causes to
> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges,

> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the constitutional deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### 1. Failure to Protect

The Eighth Amendment requires prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). To state a claim against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused the inmate harm. *Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

To meet the required subjective standard of deliberate indifference, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Bistrian v. Levy*, 696 F.3d at 367 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). Actual knowledge can be shown by circumstantial evidence where (1) "'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and (2) where 'circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Counterman v.*

6

*Warren County Correctional Facility*, 176 F. App'x 234, 238 (3d Cir. 2006) (quoting *Beers-Capitol*, 256 F.3d at 131 (quoting *Farmer*, 511 U.S. at 837)).

Negligent failure to prevent an attack by an inmate is insufficient to establish violation of the Eighth Amendment. *Davidson v. Cannon*, 474 U.S. 344, 345-49 (1986) (finding failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a constitutional violation); *Schwartz v. Cnty of Montgomery*, 843 F.Supp. 962 (E.D. Pa.) *aff'd* 37 F.3d 1488 (3d Cir. 1994) (stating failure to observe institutional policies regarding supervision of dangerous inmates constitutes negligence and does not support a § 1983 action for violation of the Eighth or Fourteenth Amendments).

In the Second Amended Complaint, Plaintiff alleges that Kennedy failed to monitor the classification process, and his "other security related activities" violated Plaintiff's rights. These allegations suggest negligence because if Kennedy failed to monitor the classification process, he was unaware of the "Keep Separate" classifications when he assigned Maurice to Plaintiff's housing unit, and therefore not deliberately indifferent. Furthermore, Plaintiff's allegation that Kennedy's "other security related activities" violated his rights is too vague to state a claim. The Court will dismiss the failure to protect claim against Kennedy without prejudice.

To state a claim of deliberate indifference by a supervisor, a plaintiff:

> must first identify "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: "(1) the existing custom and practice without that specific practice or procedure created an unreasonable risk ..." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); "(2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol*, 256 F.3d at 134 (citing *Sample*, 885 F.2d at 1118). The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of

> the supervisor. *Sample*, 885 F.2d at 1118. However, "there are
> situations in which the risk of constitutionally cognizable harm is so
> great and so obvious that the risk and the failure of supervisory
> officials to respond will alone support findings of the existence of
> an unreasonable risk, of knowledge of that unreasonable risk, and of
> indifference to it." *Id.*

*Counterman*, 176 F. App'x at 240-41.

By Order dated July 22, 2016, this Court dismissed, without prejudice, Plaintiff's failure to protect claims under 42 U.S.C. § 1983 against Defendants Warren, Nelsen, Barnes and Lawrence because Plaintiff failed to allege facts suggesting their personal involvement in a constitutional violation. (ECF No. 10 at 7.) Section 1983 liability cannot be predicated solely upon the operation of respondeat superior. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(quoting *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Plaintiff added allegations to the Second Amended Complaint that Warren, Nelsen, Barnes, and Lawrence, in their roles as administrators of New Jersey State Prison, failed to assure the proper management and conduct of the prison facility, including the implementation and exercising of policy, rule or regulatory directives, and the construction and administration of the classification of prisoners assigned to the facility.

In other words, Plaintiff alleges these defendants failed to employ an adequate classification policy or practice to actually keep separate those inmates who were designated as "Keep Separate." Plaintiff's allegations fall short of stating a supervisory claim under the Eighth Amendment. Once a plaintiff alleges the failure to employ a specific policy, practice or procedure, he must allege facts suggesting the existing practice created an unreasonable risk of harm; the supervisor was aware that the unreasonable risk was created; the supervisor was indifferent to that risk; and the injury resulted from the policy or practice.

Plaintiff has not alleged facts describing the existing practice with respect to monitoring and enforcing "Keep Separate" classifications. Nor has Plaintiff alleged that Warren, Nelsen, Barnes or Lawrence failed to respond appropriately when confronted by a pattern of injuries related to failure to enforce "Keep Separate" classifications, as would support a finding of deliberate indifference. Furthermore, Plaintiff failed to allege facts suggesting these supervisory defendants were aware of a risk that the policies and practices regarding "Keep Separate" classifications were so inadequate that they were unlikely to protect Plaintiff against an attack by Maurice unless they took additional steps. For these reasons, the Court will dismiss, without prejudice, Plaintiff's Eighth Amendment failure to protect claims against Warren, Nelsen, Barnes and Lawrence.

2.   <u>Inadequate Medical Care</u>

The Eighth Amendment's prohibition against cruel and unusual punishment requires that inmates be provided with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999). To state a claim of inadequate medical care in violation of the Eighth Amendment, an inmate must set forth: (1) a serious medical need; and (2) a prison official's deliberate indifference to that serious medical need. *Estelle*, 429 U.S. at 106. A serious medical need includes a need for which "denial of treatment would result in the unnecessary and wanton infliction of pain" or a "life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 273 (3d Cir. 2003) (internal quotations and citations omitted).

The second element of the *Estelle* test is subjective and requires an inmate to show that a prison official acted with deliberate indifference to a serious medical need. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Conduct that constitutes malpractice or negligence does not rise to the level of deliberate indifference; deliberate indifference is a reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825,

836 (1994). Courts will not second guess "the adequacy a particular course of treatment" in the exercise of sound professional judgment. *Inmates v. Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

A non-physician defendant is not deliberately indifferent to a prisoner's serious medical needs in violation of the Eighth Amendment if she fails to respond to an inmate's administrative complaint regarding medical treatment while the inmate is already receiving treatment by the prison doctor. *Durmer v. O'Caroll*, 991 F.2d 64, 69 (3d Cir. 1993). Non-medical personnel are entitled "to presume the competence of medical staff in treating a prisoner . . ." *Davis v. Superintendent of Somerset SCI*, No. 14-3746, 2015 WL 75260, at *2 (3d Cir. Jan 7, 2015) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

Eighth Amendment claims against non-medical personnel based on an unmet need for medical care are limited to circumstances where the non-medical personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill, 372 F.3d at 236.  If non-medical staff were justified in believing the prisoner was "in capable hands" with medical experts, dismissal of the Eighth Amendment claim is proper. Id.; Mines v. Levi, Civil Action No. 07-1739, 2009 WL 839011, at *6 (E.D. Pa. March 26, 2009) (failing to respond to a grievance sent by a prisoner is not sufficient to demonstrate personal involvement of a prison supervisor) (citation omitted)).

Upon screening Plaintiff's First Amended Complaint, this Court dismissed Plaintiff's Eighth Amendment inadequate medical care claim against Defendant Carver because Plaintiff's allegation that Carver did not provide additional treatment to the cut on his hand when Plaintiff complained amounted only to a claim of negligence. (ECF No. 10 at 11.) In the Second Amended Complaint, Plaintiff alleged that Carver, as an employee of the University of Medicine and

Dentistry of New Jersey, contracted by the New Jersey Department of Corrections to provide health services and medical treatment for prisoners, failed to provide the additional treatment. (ECF No. 12-1, ¶45.) As with the First Amended Complaint, Plaintiff's disagreement with the treatment provided by Carver sounds in malpractice, and fails to state an Eighth Amendment claim of deliberate indifference to his medical care.

As to the remaining medical defendants, Plaintiff did not identify a particular person who ignored Plaintiff's pleas for further evaluation and treatment for pain in his hand. In fact, Plaintiff did not make any specific factual allegations against Defendants Niery, Chase, Galligher, Ahsan, or John and Jane Doe, beyond that they were employed by a private contractor to provide medical treatment to prisoners, and failed to treat Plaintiff.

Generally, when using a fictitious name for a defendant, the complaint must contain a sufficient description to identify the defendant. Rutkowski v. Liberty Mut. Ins., Co., 209 N.J. Super 140, 146-47 (N.J. Super. Ct. App. Div. 1986); DeRienzo v. Harvard Industries, Inc., 357 F.3d 348, 353 (3d Cir. 2004). Here, Plaintiff has only alleged that John and Jane Doe provide medical services to New Jersey State Prison, and generally that Plaintiff pleaded with anyone who would listen that he required additional treatment. The Court will dismiss, without prejudice, Plaintiff's Eighth Amendment inadequate medical care claims against Carver, Niery, Chase, Galligher, Ahsan, John and Jane Doe.

In the Second Amended Complaint, Plaintiff also alleged that Defendant Warren, the administrator of the prison, violated his Eighth Amendment rights by encouraging and failing to correct the misconduct by the medical defendants. Plaintiff has not alleged how Warren encouraged the alleged misconduct. A non-medical prison official is liable under the Eighth Amendment where the official had "a reason to believe (or actual knowledge) that prison doctors

or their assistants are mistreating (or not treating) a prisoner." Spruill, 372 F.3d at 236. Plaintiff has not alleged sufficient facts to suggest Warren knew anyone in the medical department was mistreating or not treating Plaintiff. "Once a prison grievance examiner becomes aware of possible mistreatment, the Eighth Amendment does not require him or her to do more than 'review[ ] ... [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment.'" Glenn v. Barua, 252 F. App'x 493, 498 (3d Cir. 2007) (quoting Greeno v. Daley, 414 F.3d 645, 655–56 (7th Cir. 2005) (citing Spruill, 372 F.3d at 236). Therefore, the Court will dismiss the Eighth Amendment inadequate medical care claim against Warren.

B.   Claims under the New Jersey State Constitution and New Jersey Civil Rights Act ("NJCRA")

The NJCRA provides, in part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State ... may bring a civil action for damages and or injunctive or other appropriate relief.

N.J. Stat. Ann. §10:6-2.

The New Jersey Civil Rights Act is analogous to 42 U.S.C. § 1983 in that it creates a private right of action for violation of civil rights secured by the New Jersey Constitution, the laws of the tate of New Jersey, and the Constitution and laws of the United States. See Gormley v. Wood-El, 218 N.J. 72, 97 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6–1 to 2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.")

New Jersey Constitution Article 1, paragraph 12 provides that cruel and unusual punishments shall not be inflicted. A claim of deliberate indifference to a prisoner's serious

12

medical needs is cognizable under Article 1, paragraph 12 of the New Jersey Constitution, and such a claim is "analyzed identically to a deliberate indifference claim under the Eighth Amendment.'" *Ramirez v. Nugent*, Civ. Action No. 12-6781(JBS), 2014 WL 7404048, at *6 n.4 (D.N.J. Dec. 30, 2014)(quoting *Davis v. N.J. Dep't of Corrs.*, No. 10-6439, 2011 WL 5526081, at *4 (citations omitted); *Szemple v. Corr. Med. Servs., Inc., No. 07–4809*, 2012 WL 161798, at *8 (D.N.J. Jan. 19, 2012)(citations omitted)(noting that courts have "'repeatedly construed'" Article I, paragraph 12 of the New Jersey Constitution "'in terms nearly identical to its federal counterpart'") (citations omitted). Therefore, because he fails to adequately plead an Eighth Amendment claim, Plaintiff also fails to state an inadequate medical care claim under the New Jersey Constitution and the New Jersey Civil Rights Act.

Plaintiff's failure to protect claims under the New Jersey Constitution and NJRCA suffer the same fate. "The NJCRA and § 1983, when pled together, are analyzed under the same standard; first, the Defendant must have acted under color of state law, and second, the Defendant must have violated a constitutional right." *Hottenstein v. City of Sea Isle City*, 977 F.Supp.2d 353, 365 (D.N.J. 2013) (citing *Pettit v. New Jersey*, Civ. Action No. 09-cv-3735(NLH), 2011 WL 1325614 at *4 (D.N.J. Mar. 30, 2011); *see also Hottenstein v. Sea Isle City*, 793 F.Supp.2d 688, 695 (D.N.J. 2011)). "To date, [the New Jersey] Supreme Court has not held that Article I, paragraph 12 of the New Jersey Constitution should be construed more broadly than the counterpart Eighth Amendment . . . in the realm of non-capital cases." *State v. Zarate*, 2016 WL 1079462, at *15 (N.J. Super. Ct App. Div. Mar. 21, 2016).  As a result, because Plaintiff's claims are insufficient pursuant to Section 1983, they also fall short vis-à-vis the New Jersey Constitution and NJCRA.

III.    CONCLUSION

For the reasons discussed above, Plaintiff's Second Amended Complaint will be dismissed without prejudice for failure to state a claim, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) and 1915A(b)(1). If Plaintiff can supplement his pleading with facts sufficient to overcome the deficiencies noted herein, Plaintiff may seek to reopen this case and file a Third Amended Complaint.

An appropriate order follows.

s/ John Michael Vazquez
JOHN MICHAEL VAZQUEZ
United States District Judge

Date: 10/20/16
At Newark, New Jersey

14